IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CITIZENS' COMMITTEE TO SAVE OUR CANYONS, and UTAH ENVIRONMENTAL CONGRESS,<br><br>　　Plaintiffs,<br><br>　　　　vs.<br><br>THOMAS L. TIDWELL, Forest Supervisor for the Wasatch-Cache National Forest; UNITED STATES FOREST SERVICE, et al.,<br><br>　　Defendants,<br><br>　　　and<br><br>WASATCH POWDERBIRD GUIDES, INC.,<br><br>　　Intervenor. | MEMORANDUM DECISION AND ORDER ON ADMINISTRATIVE APPEAL<br><br><br>Case No. 2:05-CV-548 TS |

I.  INTRODUCTION

In September 2004, the Forest Service[1] issued a Record of Decision (ROD) approving a Special Use Permit (permit) authorizing intervenor Wasatch Powerbird Guides (WPG) to conduct helicopter skiing (heli-skiing) operations in the Wasatch-Cache and Uinta National Forests—the most significant area of dispute being the Wasatch Front in the Tri-Canyon area.  Plaintiffs challenge the issuance of the permit under NEPA,[2] the APA,[3] the NFMA,[4] and the Forest Plans for the affected Forests,[5] as well as under the various implementing regulations.

The Court finds that the Forest Service's ROD is not arbitrary, capricious, or contrary to law and should not be set aside.  Accordingly, the Court will deny the Complaint for Review and Declaratory and Injunctive Relief.

II.  BACKGROUND

The background facts are not disputed.  For over 30 years, Intervenor WPG has operated a helicopter skiing business on national forest lands in the Wasatch Mountains under permits issued by the Forest Service.  In 1999, WPG applied for a renewal of its permit.  The Forest Service prepared a final environmental impact statement for permit

---

[1] The Court will refer to the federal defendants collectively as "the Forest Service" and to the intervenor defendant as "WPG."

[2] National Environmental Policy Act, 42 U.S.C. §§ 4331.

[3] Administrative Procedure Act, 5 U.S.C. §§701-06.

[4] National Forest Management Act, 16 U.S.C. §§ 1600, *et seq*.

[5] The Forest Plans at issue are the 2003 Wasatch-Cache Forest Plan and 2003 Uinta National Forest Plan.

renewal (1999 FEIS).  At that time, the Forest Plans provided that the "Forest will be open to helicopter skiing under special-use permit"[6] and that "there is one commercial helicopter ski guide service operating in the Forest, regulated under a Special use permit".[7]  The 1999 FEIS identified as a "fundamental factor" driving consideration of the permit, the need for "allowing for an economically viable helicopter skiing operation."[8]

The 1999 FEIS imposed several conditions on the permit and WPG appealed.  In 2000, the Regional Forester issued an Administrative Decision on WPG's appeal (2000 Appeal Decision).  The 2000 Appeal Decision interpreted the language of the 1985 Forest Plans and the "economically viable" language in the 1999 FEIS.  It ordered an independent accounting to determine whether the permit restrictions prevented WPG from operating viably, and if so, ordered the Forest Service to consider such a fact as evidence of the need to modify the permit.  The economic analysis was performed and the permit restrictions were found to negatively impact WPG's economic viability.

Rather than modifying the 1999 permit, the Forest Supervisor decided to undertake the economic viability consideration mandated by the 2000 Appeal Decision for the next permit—due to issue in 2004—rather than the already-issued 1999 permit.  In the meantime, in September 2003, the Forest Service issued new Forest Plans that changed the previous language regarding helicopter skiing.  The new 2003 Wasatch-Cache Forest Plan provides that "helicopter skiing will continue to operate as a component of the

---

[6] 1985 Wasatch-Cache National Forest Plan AR at 2688-547.

[7] 1985 Uinta National Forest Plan, AR at 2687-169, 886.

[8] *Id.*

recreation picture in the Central Wasatch.  Helicopter skiing and ski mountaineering will continue to compete for untracked conditions, and those users seeking quiet in the winter backcountry may continue to object to helicopter skiing. . . . It is uncertain, however, whether helicopter skiing can be managed to remain profitable over the long term while accommodating a reasonable level of compromise with competing backcountry use."[9]

When the new Forest Plans were issued, the contract work for the 2004 FEIS had already been started.  The 2004 FEIS that was eventually issued references some material from the 1999 FEIS.  However, the 2004 FEIS states that due to the changes in the Forest Plans, "the focus of [its] analysis is on whether or not the terms of a given permit would provide WPG with adequate operational flexibility to continue to provide a quality heli-skiing experience, . . . Economic viability, *per se,* was determined to be outside the scope of this analysis on the basis of current Forest Plan direction."[10]

In 2005, the Forest Service issued a new permit to WPG against strong opposition. The new permit changed some conditions from the previous permit.  Plaintiffs contend that the new changes expanded the operations from the previous permit.  The Forest Service views the changes as granting the permittee greater flexibility.  Plaintiffs appealed.

In the Forest Service's administrative appeal process, Plaintiffs contended that the Forest Service failed to collect and analyze data of the quality required by NEPA and the Data Substantiation Act as follows: by not providing specific information on non-motorized

---

[9] 2003 Wasatch-Cache National Forest Plan, 4-162 (quoted at 2004 FEIS I-5); *See also* 2003 Uinta National Forest Plan (quoted at 2004 FEIS I-8 through I-10).

[10] 2004 FEIS, at 2-38.

primitive recreation opportunities;[11] by not adequately analyzing noise impacts; by having no substantiation for the use of explosives for avalanche testing; and because the Forest Service "failed to substantiate claims that certain operating days or parameters are needed for economic viability or operational efficiency."[12]

The Forest Service issued its appeal decision in January 2005, relying on the September 2004 ROD. The ROD references the analysis in the 2004 FEIS as the basis of its decision.

## II. POSITIONS OF THE PARTIES

Plaintiffs bring this action for declaratory and injunctive relief contending that the Forest Service issued the 2005 permit without performing the analysis required under NEPA, the NFMA, the Forest Plans, the APA, and the various supporting regulations. Specifically, Plaintiffs allege that the 2004 FEIS lacks essential analysis of the conflicts between WPG's operations and the non-motorized users of the Forest because it failed to develop information about the non-motorized use that is impacted by WPG's operations, WPG's use of explosives to start avalanches, and the impact of noise created by WPG's operations. Plaintiffs contend that the Forest Service did not comply with NEPA because it did not consult with other agencies about noise impact and did not analyze the cumulative noise impacts that could arise from the FAA's Northern Utah Airspace Initiative (FAA's proposal). Plaintiffs also contend that in issuing the permit, the Forest Service did

---

[11] Meaning individuals who ski or snowshoe into the backcountry.

[12] AR Attachment K, Decision Document or Record of Decision (ROD).

not adequately take into consideration the taking of timber resources resulting from the permitted use of explosives to cause avalanches. Finally, Plaintiffs contend that they have either exhausted their administrative remedies or that any failure to do so should be excused. Plaintiffs also raised an issue regarding monitoring of Management Indicator Species (MIS), but now concede that issue.

The Forest Service contends that Plaintiffs failed to exhaust their administrative remedies for several issues they attempt to raise in this action. The Forest Service contends that the ROD and the 2004 FEIS it relies upon are fully supported, considered a reasonable range of alternatives, contained sufficient information to make a reasoned choice between those alternatives and adequately took the required "hard look" at the environmental impact issues. The Forest Service contends that it did not consider WPG's economic viability. It contends that it is not required to take a head count of non-motorized back county users or to consult further with other agencies.

Intervenor WPG joins in the Forest Service's arguments and specifically argues that the Forest Service is not required to do an actual count of backcountry users, that the noise and safety assessments in the 2004 FEIS were adequate and that economic viability was not considered in the 2004 FEIS.

### III.  STANDARD OF REVIEW

The Court reviews this challenge to the Forest Service's issuance of the permit under the APA. Under the APA, the Court may set aside final agency action, findings, and conclusions only if they are "found to be arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law."[13]  Under this standard, the Court is not to substitute its judgment for that of the agency.[14]   The "arbitrary and capricious standard focuses on the rationality of an agency's decision making process rather than on the rationality of the actual decision."  Thus, the issue is not whether the Court considers the decision to be right or reasonable; instead the issue is "whether the agency examined the relevant data and articulated a satisfactory explanation for its decision, including a rational connection between the facts found and the decision made."[15]

Review under the APA is "highly deferential"[16] and "narrow," but must also be "searching and careful."[17]  In reviewing the challenged decision, the Court must ensure that agency decisions are founded on a reasoned evaluation "of the relevant factors."[18]

NEPA's twin aims are, first, to place upon the agency the "obligation to consider every significant aspect of the environmental impact of a proposed action. Second, to ensure that the agency will inform the public that it has indeed considered environmental concerns in its decisionmaking process."[19]  NEPA "prescribes the necessary process by

---

[13] *Greater Yellowstone Coal v. Flowers,* 359 F.3d 1257, 1268 (10th Cir. 2004).

[14] *Colorado Wild, Heartwood v. United States Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006).

[15] *Id*.

[16] *Valley Cmty. Pres. Comm. v. Mineta*, 373 F.3d 1078, 1084 (10th Cir. 2004).

[17] *Marsh v. Oregon Natural Res. Council,* 490 U.S. 360, 378 (1989).

[18] *Id.*

[19] *Ecology Center, Inc. v. United States Forest Serv.,* 451 F.3d 1183, 1189 (10th Cir. 2006).

which federal agencies must "take a 'hard look' at the environmental consequences of the proposed courses of action," but does not "require agencies to elevate environmental concerns over other appropriate considerations."[20]

## IV.  DISCUSSION

### A.  Failure to Exhaust

The Court will first consider the Forest Service's argument that Plaintiffs failed to exhaust administrative remedies during the Forest Service's administrative appeal process. The Forest Service contends that Plaintiffs failed to clearly raise and exhaust their current claims that the Forest Service violated the NFMA, the Forest Plans, and its own regulations by: predetermining its decision; failing to consider a reasonable range of alternatives; failing to take a hard look at the cumulative impacts of the permit; and, failing to follow regulations regarding timber.  The Forest Service now concedes that Plaintiffs did exhaust their administrative remedies for their claim that the Forest Service improperly considered WPG's economic viability.

Plaintiffs contend that they have exhausted these issues in administrative proceedings, and if they did not, exhaustion should be excused because (1) it would have been futile or (2) because the Forest Service deliberately mislead the public by saying that economic viability was not a controlling concern.

---

[20]*Id.*

If an issue is not preserved by raising it during the administrative appeal, it is waived and may not be challenged in a subsequent complaint.[21] Having considered the administrative record, the Court finds that Plaintiffs did not clearly raise the issue of failing to follow timber regulations in their administrative appeal. The Court further finds that Plaintiffs have not shown that it would have been futile to raise its arguments regarding the timber regulations in the administrative appeal process. Because Plaintiffs failed to raise that issue in their administrative appeal, they have waived their ability to do so in this case.[22] The Court finds that, in the administrative appeal process, Plaintiffs raised and exhausted their other claims and may properly raise those claims in the present case.

B. NEPA Claims

Having considered the administrative record and the parties' arguments, the Court finds that the Administrative record shows that the Forest Service took the required "hard look" at potential environmental impacts by performing the analysis required under NEPA through the 2004 FEIS. As required, the Forest Service's 2004 FEIS discussed "the purpose and need for the proposed action, environmental impacts resulting from the actions, unavoidable adverse environmental impacts, [and] alternatives to the proposed action."[23]

---

[21] *Silverton Snowmobile Club v. United States Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006).

[22] *Id.*

[23] *Citizens' Comm. to Save Our Canyons v. United States Forest Serv.*, 297 F.3d 1012, 1022 (10th Cir. 2002) (citing 42 U.S.C. § 4332(2)(C)(i)-(v); 40 C.F.R. § 1502.10).

Plaintiffs argue that the Forest Service failed to take the required "hard look" because it did not develop, nor did the 2004 FEIS include, quantitative data that can be correlated to analyze the impacts on other Forest users.  The data that Plaintiffs contend is required includes the number, activities, and location of other backcountry users; as well as data on noise and use of explosives to trigger avalanches.  Plaintiffs contend that the Forest Service must conduct a headcount-type study of backcountry users[24] rather than using the type of data it did assemble.  Plaintiffs argue that, without such headcount data, the 2004 FEIS lacks an essential analysis of impacts on the non-motorized users of the Forest.

The argument that the Forest Service does not meet the "hard look" requirement if it does not develop "hard data" was recently rejected in *Ecology Center v. United States Forest Service*.[25]  In *Ecology Center*, the Tenth Circuit held that the plaintiffs therein "unpersuasively attempt[ed] to equate the lack of a 'hard look' with a lack of 'hard data.'"[26]

Similarly, in the present case, the Court rejects the argument that the required "hard look" could not be conducted without the development by the Forest Service of quantitative data on the number, location, and activities of other back country users or quantitative data regarding noise, explosives, or avalanches.

---

[24]*See* Pl.s' Br. In Reply to Intervenor, at 2-3 and n.1-2.

[25]451 F.3d at 1189-90.

[26]*Id.* at 1190.

Moreover, the Court finds that the 2004 FEIS did consider the numbers of backcountry users, based upon estimates derived from various sources. Those sources include such things as the relative growth of non-motorized backcountry skiing compared to ski resort growth.[27] The Court finds that such information provided a rational basis for its decision.

Plaintiffs have not shown that any cumulative noise impacts arising from the FAA's proposed air traffic routing change were not adequately considered. The Forest Service solicited the FAA's comments by providing it a draft of the 2004 FEIS, but no comment was received from the FAA. The 2004 FEIS disclosed and discussed the foreseeable impacts from the FAA's proposal. In the absence of comments from the FAA, and where the FAA has not yet prepared its own EIS regarding its proposal, the Forest Service has complied with NEPA regarding the FAA's proposal.

Plaintiffs contend that because it disguised its consideration of economic viability by renaming it operational efficiency, the Forest Service failed to comply with NEPA because the FEIS failed to accurately identify the issue for public comment, as a subject of NEPA review, or as the basis for its decision. The Forest Service and WPG contend that operational efficiency and economic viability are not the same issue.

The Court finds that the administrative record shows that the 2004 FEIS considered the more narrow issue of operational efficiencies rather than the broader issue of economic viability. Some factors involved in these two issues may overlap but, as noted, operational

---

[27] *See* 2004 FEIS at 3-2 through 3-5 and 2004 ROD at 14.

efficiency contemplates a more narrow view, containing fewer factors. The Response to Comments on the Draft EIS[28] evidences that Forest Service's position that the operational efficiency it was considering was not the same as economic viability, was adequately identified for public comment, and was an issue subject to review.[29] The Court finds that it was also adequately identified as a basis of the decision.

The Court finds that the Administrative record shows that the 2004 FEIS contains sufficient information for the Forest Service to make a reasoned choice between alternatives. The Forest Service took the "hard look" required, solicited comments and considered a reasonable range of alternatives.[30] In short, the Court finds that the Forest Service conformed with NEPA's requirements.[31]

  C. <u>NFMA and Forest Plan Claims</u>

The NFMA requires that for "individual management actions within a forest, . . .[a] permit must be consistent with a forest's overall land management plan."[32]

Plaintiffs contend that the ROD and the 2004 FEIS violated the NFMA and the Forest Plans by improperly giving controlling weight to the "economic viability" issue despite

---

[28]AR, Appendix B.

[29]*E.g. Id.* at B-2 Comments Nos. 7-9 and Responses Nos. 7-9. Response No. 7 notes that the FEIS adds the term operating efficiency to the Glossary. *See also* AR at 1-12 (changes from draft EIS to the 2004 FEIS).

[30]*E.g.* 2004 FEIS S-3 and 4 (Table summarizing proposed action and alternatives).

[31]*See Ecology Center*, 451 F.3d at 1189-90 (listing components of the requisite "hard look").

[32]*Id*. at 1185 (citing 16 U.S.C. § 1604(i)).

having determined that it was outside of the scope of the 2004 FEIS due to the change in the Forest Plan.  They argue that analysis in the 2004 FEIS on significant areas such as noise, backcountry users, and economic viability/operational efficiency, refers back to the 1999 FEIS, which expressly stated the need to maintain viability for the helicopter skiing provider.  They argue that the Forest Service improperly considered "economic viability" by replacing it with the term "operating efficiencies."  Plaintiffs contend that because the Forest Service failed to disclose that it was actually considering "economic viability" under the guise of "operating efficiencies," the Forest Service failed to sufficiently identify the issue it was considering for purposes of public comment, NEPA review, and as the basis of its ROD.   Plaintiffs contend that this results in the decision to issue the permit being unlawfully predetermined as well as arbitrary and capricious.

The Forest Service and WPG contend that the 2004 FEIS and the ROD did not consider "economic viability."  The Forest Service contends that although the economic survival of the particular business of helicopter skiing or a particular permittee's financial success was no longer part of the Forest Plans, the Forest Plans remain committed to providing a range of recreational opportunities to the public that included helicopter skiing.  In order to provide that range of opportunities, the Forest Service contends that it appropriately considered how each operational condition of the permit would negatively or positively affect the permittee's ability to provide the type and level of the heli-skiing opportunity that it had determined would be provided to the public.

As an initial matter, it does not appear that the Forest Service was precluded from looking at operational efficiency by anything but its own decision that the changes in the

Forest Plans meant that the economic viability analysis of the previous FEIS was now "moot." Having determined that it was moot, the Forest Service could choose to make it outside the scope of the subsequent FEIS, but neither the new Forest Plan nor NEPA made it mandatory to do so.

Moreover, for the reasons stated above in connection with the NEPA claim, the Court has determined that the operational efficiency was defined and disclosed as a subject for consideration and review, as well as a basis of the decision. As also noted, it is not the same as economic viability—being much more narrow—although some factors may overlap.

Having determined that the two terms do not necessarily cover the same factors, the Administrative record shows that the Forest Service did not consider or rely on economic viability in making its decision to issue the permit. The 2004 FEIS discussed the purpose and need for the proposed action.[33] Although the Forest Plans no longer mandated maintenance of a helicopter skiing operation, the Forest Service still desired to maintain helicopter skiing among the Forests' recreational opportunities. It identified the purpose and need in terms of "an attempt to provide improved operating efficiencies for WPG relative to the current permit while seeking to minimize conflicts between heli-skiing and other winter recreational uses."[34] Nothing precludes the Forest Service from looking

---

[33] *Ecology Center*, 451 F.3d at 1190 (quoting *Citizens' Comm.*, 297 F.3d at 1022).

[34] 2004 FEIS at I-7.

at how the operational conditions—for example the availability of home runs[35] on otherwise closed days—affected the ability of a permittee to continue to offer the services as part of the stated purpose and need.

Plaintiffs contend that the Forest Service's decision was unlawfully predetermined and that the Forest Service's reliance on an accountant's report prepared in connection with the 2000 Appeal Decision was arbitrary and capricious. The Forest Service disputes these contentions.

The fact that the decision to reissue the permit is one that Plaintiffs do not agree with does not render it predetermined. The Forest Service fully complied with the requirements of NEPA and NFMA, and the ROD was consistent with the Forest Plans. The Court finds no evidence that the resulting decision was unlawfully predetermined.

As to the accountant's report, there is no evidence in the administrative record to establish that the Forest Service relied upon the financial report in making its Decision. Therefore, the Court will not address the issue further.

The Court finds that there is no violation of the NFMA.

D. Conclusion

For the foregoing reasons, the Court finds that the ROD is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and it may not be set aside.

---

[35] According to the Forest Service, "home runs" are the practice of ending the last ski run of the day on the road where a van can transport skiers back to the heli-base, thereby decreasing the number of helicopter flights. Forest Service Br. at 13 n.2.

Therefore, the Court will deny the Plaintiffs' Complaint for Review and Declaratory and Injunctive Relief.

V.   ORDER

It is therefore

ORDERED that the Complaint for Review and Declaratory and Injunctive Relief is DENIED AND DISMISSED.

DATED  November 17, 2006.

BY THE COURT:

_____
TED STEWART
United States District Judge